UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
NILSA YOLANDA ORTIZ,                )
        Plaintiff,                  )
                                    )   CIVIL ACTION
v.                                  )   No. 13-40001-TSH
                                    )
                                    )
COMMISSIONER OF SOCIAL SECURITY,    )
        Defendant.                  )
                                    )
_____)

# ORDER
## January 26, 2015

**HILLMAN, D.J.**

## Background

Nilsa Yolanda Ortiz ("Ortiz") has brought this action pursuant to section 205(g) of the Social Security Act, 42 U.S.C. §405(g)("Act") seeking judicial review of a final decision made by the Commissioner of the Social Security Administration ("Commissioner") denying her application for Social Security disability benefits. Ortiz has filed Plaintiff's Motion For Judgment (Docket No. 12). Defendant, Commissioner of Social Security, has filed Defendant's Motion for an Order Affirming the Decision of the Commissioner (Docket No. 17).

## Procedural History

In or about March 2009, Ortiz filed applications with the Social Security Administration ("SSA") for Social Security disability benefits ("DBI") and supplemental security income ("SSI")(*Tr.,* at pp. 161-62, 165-171)[1], alleging she had been disabled since February 1, 2008[2].

---

[1] A transcript of the official record has been filed under seal with the court, (Docket No. 8)("*Tr.*")

[2] At the hearing, Ortiz amended her claim to allege that her disability began on January 1, 2010. (*Tr.*, at pp. 14, 33).

Ortiz alleged that she was limited in her ability to work due to degenerative disc disease of the lumbar spine, diabetes mellitus, asthma, obesity, right elbow epicondylitis, acute sarcoidosis, vision problems related to her diabetes, depression and right shoulder impairment[3]. *Pl's Brief in Sup. Of Mot. for J.* (Docket No. 12-1), at the fourth page. The claim was denied on the grounds that Ortiz is not disabled within the meaning of the Act. Ortiz seeks reversal of the Commissioner's decision on the grounds that the findings of the Administrative Law Judge ("ALJ") are not supported by the substantial evidence in the record. The Commissioner asserts that the ALJ's decision is supported by substantial evidence on the record and therefore, should be affirmed.

## **Background**

### *Summary of Ortiz's Educational and Occupational History*

Ortiz was 45 years old at the time that the ALJ denied her claim for SSI and DBI. She has a high school education and completed one year of college. Her past relevant work included employment at a recycling company as a separator/reclaimer, van driver, machine operator and sales clerk (*Tr.*, at pp. 36-40, 43, 195, 236). Ortiz testified she last worked in 2007, but felt she was capable of working through 2008 (*Id.*, at p. 44). She remained insured for purposes of the Title II disability insurance program through June 30, 2011 (*Id.*, at pp. 172-175)

### *Summary of Medical History*

In December 2009, when seen at University of Massachusetts Medical Center/Memorial Campus for an initial visit, Ortiz reported no current complaints and indicated her blood sugar levels were well controlled. (*Id.*, at p. 436). Examination findings at this time were generally

---

[3] Ortiz did not specify the nature of her disability in her application. (*Tr.*, at pp. 161-62). In the Disability Report submitted to the SSA by Ortiz, she indicated the illnesses, injuries and conditions limiting her ability to work as" diabetes and asthma." (*Tr.*, at p. 179). She further stated that her these conditions limited her ability to work because she cannot work in dusty areas. (*Id.*)

normal. (*Id.*) The doctor who examined her, Dr. Rosa, discussed with her the need to exercise and lose weight to help control her diabetes and hypertension, as well as the need to stop smoking (Ortiz indicated she was not ready to stop smoking).

In January 2010, Ortiz reported elevated blood sugar levels despite maintaining a relatively healthy diet and increased hearing loss over the preceding three months (*Id.*, at 437). In-office testing indicated seemingly significant bilateral hearing loss. (*Id.*) In February 2010, it was noted that Ortiz had been taking her insulin incorrectly at home, and she was given additional instructions on proper administration of insulin (*Id,* at 438).

In March 2010, Ortiz told Dr. Rosa that testing had shown total hearing loss in her left ear (*Id.,* at p. 439). Dr. Rosa noted that she had lost 10 pounds and encouraged her to continue losing weight (*Id.*). Ortiz continued to have diabetic kidney problems (*Id.*). In April 2010, Ortiz reported a two-week history of ankle pain and swelling (*Id.*, at p. 440). Her weight was stable (*Id.*). She said her morning blood sugar levels were generally in the low 100s (*Id.*). Later that month, Dr. Rosa stated that plaintiff's ankle swelling had resolved after a medication adjustment and that she was doing well now (*Id.*, at 442). Ortiz told Dr. Rosa that she had no complaints and felt great, but had recently developed a cold (*Id.*).

In May 2010, Ortiz reported she felt well overall, but had just developed bilateral neck swelling (*Id.,* at p. 443). The examining nurse diagnosed mumps (*Id.*). In June 2010, Dr. Rosa noted that testing had ruled out mumps and that the gland swelling was likely due to a viral infection (*Id.*, at p. 444). Ortiz was diagnosed as suffering from an acute sinus infection. (*Id.*)

In August 2010, Ortiz reported that she had felt unwell since gland swelling had begun eight weeks previously and had lost 30 pounds (*Id.* at p. 446). Blood sugars had been low, but were now well-controlled (*Id*). It was noted that she had been hospitalized for pneumonia and a

3

lung CT had shown possible malignancy or sarcoidosis (*Id*.). Later that month Dr. Rosa noted that when hospitalized, Ortiz had also been suffering from acute kidney failure (*Id.*, at p. 449). Blood pressure was still low (*Id*.). Ortiz reported that she continued to suffer from fever, chills and a poor appetite, and had lost another seven pounds (*Id*.). Dr. Rosa noted that a lung tissue biopsy had ruled out malignancy, but was consistent with sarcoidosis (*Id*.). On August 23, 2010, Dr. Rosa wrote a letter "To whom it may concern," indicating that Ortiz's health had recently deteriorated, that she could not currently work, and it was unlikely she would be able to work in the future (*Id.,* at p. 416). Dr. Rosa did not elaborate as to a diagnosis or provide any basis for his conclusion that Ortiz would be unable to work in the future. (*Id.*)

In September 2010, Ortiz told Dr. Rosa that she had been doing very well; she had recently flown to Puerto Rico for the funeral of a brother and was feeling much stronger and no longer suffered from fever, chills, nausea or vomiting (*Id.*, at p. 451). She had regained a little weight, but found it difficult to get up and down the stairs at her home, as she lived on the third floor (*Id*.). She reported feeling down, lacking energy, and not enjoying things, but had no suicidal thoughts (*Id*.). Dr. Rosa described her as "[w]ell-appearing" and characterized her sarcoidosis as stable (*Id*.). Ortiz indicated that her blood sugar was under control; she thought her improved diet and weight loss had helped with her blood sugar control (*Id*.).

In November 2010, Ortiz told Dr. Rosa that she was feeling better and stronger (*Id., at* 453). Tests showed no signs of malignancy and were consistent with Dr. Rosa's working diagnosis of sarcoidosis. (*Id.*) In December 2010, Dr. Smyrnios noted that symptoms associated with Ortiz's lymph swelling were essentially resolved. Ortiz reported she was feeling a lot better (*Id.*, at p. 478).

In January 2011, Ortiz told Dr. Rosa that her blood sugar levels were under

control, her appetite was good, and she was regaining some weight. She said that she felt well overall (*Id.,* at 454). She was having trouble getting to sleep due to the feeling of pins and needles in her legs; Dr. Rosa felt this was due to diabetic neuropathy and prescribed nortriptyline (*Id.*). Dr. Rosa noted that Dr. Newman, Ortiz's pulmonary specialist, did not want to start prednisone treatment for sarcoidosis until a repeat CT scan was performed, because her symptoms were improving (*Id.*).

In March 2011, plaintiff told Dr. Rosa that she was feeling much stronger, but was having some right shoulder pain (*Id.*, at p. 455). She had gained another 20 pounds and had been re-started on insulin, due to increased blood sugar levels (*Id.*). Ultrasound had shown multiple thyroid nodules, generally stable since a 2009 ultrasound (*Id.*). A CT scan had shown lymph nodes had decreased in size and Dr. Newman had decided not to prescribe prednisone treatment (*Id.*).

In April 2011, plaintiff reported that physical therapy had helped with her shoulder pain, but that it was still so severe that it made it difficult to do things around her house (*Id,* at p. 457). NSAIDs (non-steroid anti-inflammatory drugs) and Tylenol provided only minimal relief (*Id.*). On examination, Ortiz could not raise her right arm above 90 degrees and showed reduced flexion and extension of the shoulder joint (*Id.*). A shoulder x-ray was unremarkable (*Id*). Dr. Rosa diagnosed likely osteoarthritis (*Id*).

In May 2011, Ortiz reported some improvement in her shoulder pain, but said it still interfered with her ability to sleep at night (*Id.*, at p. 458). She said she did not have any weakness or numbness in her arm and hand (*Id.*). In June 2011, Ortiz said she still had significant shoulder pain (*Id.,* at *459*). Dr. Goss, the orthopedist she had seen, had diagnosed a "frozen shoulder" and recommended home physical therapy, a recommendation that Ortiz was

5

not pleased with (*Id*). Pulmonary function testing in June 2011 yielded normal results (*Id.* at p. 485).

### *Medical Expert Opinions*

In May 2009, Dr. Poirier, a physician who reviewed Ortiz's records, conducted and residual functional capacity ("RFC") assessment and concluded that Ortiz was able to perform light work that did not require exposure to concentrated levels of pulmonary irritants. She could occasionally lift 20 pounds, frequently lift 10 pounds, could stand and/or walk with normal breaks for a total of 6 hours in an 8 hour day, could sit with normal breaks for about 6 hours in an 8 hour day, and was not limited in regard to pushing or pulling. He also found that Ortiz could frequently climb ramps/stairs, balance, stoop, crouch, and crawl and could occasionally kneel and that she had not established any visual or communicative (hearing or speaking) limitations. Finally, he found that she had no limitations with regard to environmental factors such as cold, head, wetness, humidity, noise or vibration, but that she had to avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, *etc.* (*Id.*, at pp. 241-248). In October 2009, Dr. Narayan, who reviewed Ortiz's updated medical records, concurred with the earlier RFC assessment (*Id.*, at p. 249).

### *The ALJ's Findings*.

The ALJ determined that Ortiz had not been under a disability within the meaning of the Act from February 1, 2008 through August 31, 2011 (date that ALJ's decision issued). Following is a summary of the ALJ's findings (*See Tr.*, at pp. 8-23):

> 1) Ortiz meets the insured status requirements of the Act through June 1, 2011.
>
> 2) Ortiz had not engaged in substantial gainful activity since January 1, 2010.

3) Ortiz has the following severe impairments: degenerative disc disease of the lumbar spine, asthma, obesity, diabetes mellitus, right elbow epicondylitis, calcaneal spurs to the right foot, sarcoidosis and some vision problems related to her diabetes.

4) Ortiz does not have an impairment or combination of impairments that meets or medically equaled the severity of one of the listed impairments set forth in the applicable sections of the Code of Federal Regulations.

5) Considering the entire record, Ortiz has a RFC to perform sedentary work, including lifting ten pounds, standing and walking two hours, and sitting six hours during an eight-hour workday. She is limited to: indoor work, with no concentrated exposure to dust, fumes, strong odors, temperature or humidity extremes; frequent, but less than constant push/pull type activities; no more than occasional overhead reaching or forward reaching beyond arm's length; and would need a position which does not require close visual acuity.

6) Ortiz's RFC prohibits her from returning to past work.

7) Given Ortiz's age (she is defined as a younger individual), education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that she could perform.

In making his, findings, the ALJ considered all of Ortiz's reported symptoms and the extent to which they can reasonably be accepted as consistent with the objective medical evidence in the record. The ALJ undertook the required two-step process in evaluating Ortiz's credibility, that is, he first determined whether there was an underlying medically determined impairment (*i.e.,* one that can be shown by medically acceptable clinical and laboratory diagnostic techniques), that could reasonably be expected to produce her pain or other symptoms. He then evaluated the intensity, persistence, and limiting effects of her symptoms to determine the extent to which they limit her functioning.

The ALJ noted that in her disability report, Ortiz stated that she can no longer work due to her diabetes and asthma. In a function report, she reported that she had no problem sleeping, was capable of all personal care needs, could provide for her children, prepare meals, perform

household chores at her own pace, use public transportation, walk and go out alone, shop and drive. She did report that she had problems lifting more than ten pounds, walking more than three blocks and climbing stairs. When she was interviewed in the SSA field office, no signs of difficulty in sitting, standing, walking or breathing were observed. She told the interviewer she wanted to work, but was having difficulty in finding employment. In a disability appeal report, however, Ortiz stated her asthma was getting worse and causing problems breathing and her right arm was out of place and painful.

At the hearing, Ortiz testified she suffered from asthma, back pain, right shoulder difficulties and had been diagnosed with sarcoidosis. She also had diabetes mellitus and was obese. She further testified that she had difficulty climbing the stairs and had lost her driver's license due to her vision problems. She also testified that she could use public transportation, and had not required any surgery for her shoulder problems (although it did cause her to sleep poorly at night). She could do household chores and shop with help from her daughters. She had started to use a cane in August 2010 due to left leg problems and balance issues.

The ALJ found that Ortiz's impairments could reasonably be expected to cause the alleged symptoms, but that her statements about the intensity, persistence and limiting effects of her symptoms were not credible to the extent they were inconsistent with the RFC assessment. He summarized the medical evidence which supported these findings: Ortiz's examinations from September 2010 through June 2011 show continued medical improvement with Ortiz reporting that she was progressively feeling better and stronger; her blood sugars were better; she was gaining weight (she had suffered a rapid, significant weight loss when feeling poorly); and her appetite was back to normal. Her only consistent complaint was right shoulder pain, which

affected her ability to sleep and raise arm over her head. The shoulder pain improved over time, but remained persistent. No other physical issues were noted in her records.

Essentially, based on the medical records, the ALJ found that while Ortiz suffered from numerous impairments and that, at times, her medical condition had been poor, her condition had stabilized significantly over time. The ALJ determined that Ortiz was capable of work, albeit with slightly more limitations than those determined by the state agency medical consultants. In making this determination, the ALJ gave no weight to Dr. Rosa's August 2010 assessment that Ortiz was unable to work because it was inconsistent with Ortiz's medical history and appeared to be based on subjective allegations rather than objective findings. He also found that the purpose of Dr. Rosa's assessment appeared to be designed to increase the probability of collecting disability benefits.

The ALJ concluded that Ortiz's allegations of pain and limitation are credible only to the extent that she is limited to modest "exertional/non-exertional [sic.]" limitations and that the record does not bear out a debilitating degree of functional limitations which would eliminate her ability to work on a continuous basis. More specifically, he found that while Ortiz appears sincere, in light of reports from treating and examining sources, as well as her ability to perform a wide range of daily activities, she is not incapacitated to the extent alleged. He also determined that the RFC assessment is supported by the medical record and that the conditions and reasonable limitations associated with her medical impairments are adequately addressed thereby.

**Discussion**

*Standard for Entitlement to Disability Insurance Benefits*

To qualify for disability insurance benefits, a claimant must demonstrate that s/he is disabled within the meaning of the Act. The term "disability" as the defined in the Act is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A). The impairment(s) must be severe enough to prevent the claimant from performing not only his or her past work, but also any substantial gainful work existing in the national economy. 42 U.S.C. §423(d)(2)(A); 20 C.F.R 404.1560(c)(1). In making such determination, the ALJ must assess the claimant's RFC in combination with the "vocational factors, [including the claimant's] age, education, and work experience." 20 CFR § 404.1560(c)(1).

To determine disability, the ALJ evaluates the claimant's application utilizing the following five-step analysis: 1) if the applicant is engaged in substantial gainful work activity, the application is denied; 2) if the applicant does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the applicant's "residual functional capacity' is such that he or she can still perform past relevant work, then the application is denied; [and] 5) if the applicant, given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted. *Seavey v, Barnhart*, 276 F.3d 1, 5 (1st Cir. 2001). It is the applicant's burden to show at Step 4 that s/he is not able to do past relevant

work as the result of a "significant limitation;" if the claimant meets his/her burden, "the Commissioner then has the burden at Step 5 of coming forward with evidence of specific jobs in the national economy that the applicant can still perform." *Id.*; *see also* 42 U.S.C. 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the [ALJ] may require."). It should also be noted that "[a]ll five steps are not applied to every applicant, as the determination may be concluded at any step along the process". *Seavey*, 276 F.3d at 5.

## Court's Review Of Commissioner's Decision

Pursuant to the Act, this Court may affirm, modify or reverse the Commissioner's final decision, with or without remanding the case for rehearing. 42 U.S.C. § 405(g). This Court reviews the Commissioner's final decision to determine whether: (i) the correct legal standard was applied, and (ii) the decision was supported by substantial evidence. *Id.,* at 9; *see also* 42 U.S.C. §405(g). While the Court's review of questions of law is *de novo,* the Court defers to the Commissioner's findings of fact, so long as they are supported by substantial evidence. *Seavey*, 276 F.3d at 9, 10. Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v.* Perales, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971); *see also Ortiz v. Sec'y of Health & Human Servs.,* 955 F.2d 765, 769 (1st Cir. 1991)(even if administrative record could support multiple conclusions court must uphold Commissioner's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.")

In applying the "substantial evidence" standard, the Court must bear in mind that it is the province of the ALJ, not the Court, to find facts, decide issues of credibility, draw inferences from the record, and resolve conflicts in the evidence. *Ortiz,* 955 F.2d at 769. Ultimately, the

11

Court may affirm, modify, or reverse the Commissioner's decision, with or without remanding the cause for a rehearing, 42 U.S.C §405(g)[4], but reversal is warranted only if the ALJ committed a legal or factual error in evaluating a claim or if the record contains no "evidence rationally adequate.... to justify the conclusion." *Roman-Roman v. Commissioner of Social Security*, 114. Fed. App'x. 410, (1st Cir. 2004); *see also Manso-Pizarro v. Sec'y of Health and Human Services*, 76 F. 3d. 15 (1st Cir. 1996).

## *Whether the Commissioner's Decision Should be Affirmed*

The ALJ undertook to apply the required five step sequential analysis. At Step 3, the ALJ determined that Ortiz's physical impairments, considered individually or together, did not meet or medically equal a "listed" impairment. At step 4, the ALJ determined that based on her RFC, Ortiz could not perform her past relevant work. At step 5 the ALJ determined that given Ortiz's age, education, work experience and RFC, she is capable performing work that exists in significant numbers in the national economy.

Ortiz asserts that the ALJ's decision that she has a RFC for sedentary work is not supported by substantial evidence in the record. More specifically, she argues that the ALJ: (1) failed to properly assess her credibility and (2) erred by analyzing her impairments individually rather than considering the combined effect of her multiple impairments. Ortiz also asserts that the ALJ erred by finding that there exist substantial number of jobs in the economy that she can perform. The Commissioner, on the other hand, argues that the ALJ's finding regarding Ortiz's credibility should be upheld because he set forth an adequate basis for them and there is adequate support in the record to support such findings. The Commissioner further argues that the record

---

[4] Section 405(g) provides that "[t]he [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."

supports the ALJ's findings that Ortiz retains the ability to do sedentary work, with limitations, and that the record supports the ALJ's finding that there are adequate jobs existing in the national economy which she can perform.

*Whether There Is Substantial Evidence In The Record To Support The ALJ's Finding That Ortiz Has A RFC For Sedentary Work*

### *Whether the ALJ erred in assessing Ortiz's Credibility*

Ortiz argues that the ALJ failed to carry out an adequate credibility assessment as required by the Commissioner and *Avery v. Sec'y of Health & Human Servs.*, 797 F.2d 19, 22 (1st Cir. 1986). The ALJ found Ortiz's testimony concerning the intensity, persistence and limiting effects of her symptoms were not credible to the extent that her statements were inconsistent with her stated RFC. (*Tr.*, at pp. 28-29). The First Circuit has noted, "that complaints of pain need not be precisely corroborated by objective findings, but they must be consistent with medical findings." *Dupuis v. Sec'y of Health and Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989). Additionally, the ALJ's determination concerning a claimant's complaints of pain and external limitations "must be supported by substantial evidence and the ALJ must make specific findings as to the relevant evidence [s/he] considered in determining to disbelieve the [claimant]". *DaRosa v. Sec'y of Health and Human Servs.*, 803 F. 2d 24, 26 (1st Cir. 1986). In Ortiz's case, the ALJ fully considered the medical record as a whole and was sufficiently specific as to why, although he found her sincere, he did not give weight to her statements, *i.e.,* why he found that Ortiz's statements "concerning the intensity, persistence and limiting effects of these symptoms are not credible". (*See Tr.*, at pp. 18-20).

This is a difficult case, both for the ALJ and reviewing court. The difficulty comes because there was a period in or around the mid-2010 when Ortiz appears to have suffered a

dramatic health crisis which essentially rendered her *temporarily* disabled. Indeed, in August 2010, Dr. Rosa wrote an assessment stating that Ortiz was unable to work. However, the medical reports from September 2010 forward, show marked and progressive improvement in Ortiz's health and ability to engage in daily activities. Indeed, with the exception of her shoulder, her health stabilized with treatment and her being compliant with her medication (particularly her insulin). Based on the medical evidence as well as other documentary evidence in the record reflected above, I find that there is more than adequate evidence in the record to support the ALJ's findings that neither the objective medical evidence, nor the evidence regarding Ortiz's daily activities support her subjective complaints. Therefore, the court will not disturb the ALJ's credibility determination.[5]

## Whether The ALJ Properly Assessed Ortiz's Impairments

The ALJ determined that Ortiz has the following severe impairments: degenerative disc disease of the lumbar spine, asthma, obesity, diabetes mellitus, right elbow epcondylitis, calcaneal spurs to the right foot, sarcoidosis and some vision problems related to her diabetes. Ortiz asserts that she also claimed further impairments based on depression and pain in her right shoulder. She also asserts that when he determined she had a RFC for sedentary work, the ALJ erred by analyzing each of her impairments individually, rather than evaluating the combined effect of these "severe" impairments.

---

[5] To the extent that Ortiz is suggesting that the ALJ erred by refusing to give any weight to Dr. Rosa's August 2010 assessment that she is unable to work, her argument is futile. The ALJ has the discretionary power to discount medical opinions that are inconsistent with the majority of medical evidence in the record. *Keating v. Sec'y of Health and Human Servs.,* 848 F.2d 271, 276 (1st Cir. 1988); *see also*, *Haidas v. Astrue*, 2010 WL 1408618 (D.Mass. Mar. 31, 2010)(citing *Morales v. Comm'r of Soc. Sec.*, 2 Fed. App'x 34, 36 (1st Cir. 2001)). While Ortiz may not have been able to work *in August 2010*, the medical evidence in the record clearly does not support a finding that Ortiz was unable to perform any work in January 1, 2010 (her alleged onset date), or that she was unable to perform *any* work from September 10, 2010 going forward.

14

Having reviewed the record, I am satisfied that in assessing Ortiz's RFC, the ALJ considered the combined effect of those aforementioned sever impairments which he found Ortiz suffered for at least a twelve month continuous period. The ALJ did not consider Ortiz's depression and right shoulder pain, which she raised for the first time at the hearing (*Tr.*, at pp. 45, 51) as disabling. The ALJ recognized that Ortiz has a remote history depression, which was not established as a disabling condition for a period of greater than twelve months. He further found there is no longitudinal history of mental health treatment, few references to depression in her medical notes, and that she is regularly described as alert and oriented and pleasant with normal mood and affect (*Tr.,* at p. 20). The substantial evidence in the record supports these findings. Therefore, the ALJ did not err by determining that Ortiz does not suffer from any mental health impairment which needs to be accommodated. The ALJ also found that her right shoulder issues had not been established for twelve continuous months. (*Id.*, p. 21). He noted that in any event, the limitations he was imposing to accommodate her right elbow issues would be adequate to address any limitations necessary for her right shoulder pain. (*Id.).* For these reasons, I find that the ALJ's finding that Ortiz has a RFC for sedentary work is supported by the substantial evidence in the record.

**Whether the ALJ erred by finding that there are sufficient jobs in the national economy which Ortiz can perform**

Ortiz asserts that the ALJ's findings that there exist jobs that exist in significant numbers that she can perform given her RFC is not supported by substantial evidence in the record. Ortiz argues that the ALJ erred in the hypothetical proposed to the vocational expert ("VE") because he failed to include limitations based on her depression and hearing loss. This assertion is a non-starter. As I have previously stated, there was substantial evidence in the record to support the

ALJ's decision that depression was not a severe impairment and/or that Ortiz had not suffered from depression for a continuous twelve month period. As to her hearing loss, the ALJ found that this alleged impairment also did not meet the durational requirement. (*Tr.*, at p. 21). This finding is also supported by substantial evidence in the record. In any event, the VE testified that considering the limitations imposed by *all* of Ortiz's severe impairments and assuming that she would have to use a cane for balance, there would still be a significant number of jobs in the local and national economy which Ortiz could perform. (*Id.*, at pp. 56-58). More specifically, the VE testified that the following positions would be available: sorter (400 in Massachusetts, 20,000 nationally), packaging (300 in Massachusetts, 10,000 nationally) and small parts assembler (400 in Massachusetts and 50,000 nationally). If the individual had to use a cane to balance whenever standing, the VE testified that the jobs available would be reduced by twenty-five percent (25%). (*Id.*, at pp. 56-58).[6]

When asked whether an individual with Ortiz's impairments who was likely, on up to three occasions a month, arrive late to work, leave early, or miss work without calling in due to pain, side effects of pain medication and/or emotional consternation, the VE testified that such an individual would not be employable (*Id.*, at p. 58). However, there is no evidence in the record to support a finding that Ortiz suffered any such affects. Simply, put there is substantial evidence in the record to support the ALJ's finding that there are a significant number of jobs in the national economy which Ortiz could perform.

---

[6] Ortiz's assertion that there are not a significant number of jobs in the economy appears to be based on a misapprehension of the record. She argues that if you consider the restrictions required by her asthma, *i.e..,* that she cannot work around cardboard and the like, then the VE testified that the number of jobs available would be reduced by an *additional* fifty percent (50%), such that the VE's original job estimates must actually be reduced by almost seventy-five percent (75%) when you also consider her balance issues. Ortiz misinterprets the VE's testimony—the VE testified that she had already reduced the original number of sedentary jobs that would available to Ortiz by fifty percent (50%) given the environmental and other limitations required by her impairments. *(Tr., at pp.* 59-60).

## **Conclusion**

For the foregoing reasons,

Plaintiff's Motion For Judgment (Docket No. 12) is ***denied*** and Defendant's Motion for an Order Affirming the Decision of the Commissioner (Docket No. 17) is ***allowed***.

/s/ **Timothy S. Hillman**
TIMOTHY S. HILLMAN
DISTRICT JUDGE